·GERTRUDE B. WHITWORTH, by next friend, *v.* ROBERT
EWING.

1. WILLS. *Legacy. Interest.* A testator by his will directed his executors to set apart the sum of $20,000 in gold, and let it remain as so much unproductive capital, not even lending it on interest, and on the day that his great-granddaughter (naming her) arrived at the age of twenty-one years to pay over to her the said sum in gold as a birth-day present, the legacy not to vest in her until that day. The executor collected the requisite amount of funds, and then loaned the same on time, at the rate of ten per cent. per annum, payable in gold. *Held,* that the legatee was entitled to the interest.

2. SAME. *Construction.* The testator devised and bequeathed the residue of his estate to his executors, who are also made testamentary trustees, in trust to keep the estate together to the best advantage, the interest, rents, issues and profits to be appropriated for the education, benefit, support and maintenance of his said great-granddaughter, then an infant, for and during the period of her natural life, for her sole and separate use, her receipt to be a good voucher to his executors " for said interest, rents, issues and profits, and the same" not to be liable for the debts of any husband, and, upon her death leaving issue, the executors are to convey " the *corpus* of said estate devised to them as aforesaid in trust," unto such issue; but should she die without issue living, then " the *corpus* of said estate, including any interest, rents, issues and profits, not used or appropriated for the benefit of said great-granddaughter, and also including said legacy of $20,000 in gold, should the same not have vested," to be disposed of to certain other persons in remainder. *Held,* that the will, in the contingency of the first taker leaving issue, gave to her all the " interest, rents, issues and profits" of the estate, and that there is not enough on the face of the will to show a change of intent in the contingency of not leaving issue.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A.
·G. MERRITT, Ch.

DEMOSS & MALONE for complainant.

EAST & FOGG for defendant.

COOPER, J., delivered the opinion of the court.

On October 19, 1870, Charles Bosley departed this life in Davidson county, where he had long resided, having first made and published his last will and testament, which was duly proved and admitted to record. Only one of the executors named in the will qualified, and he was, on May 1, 1874, removed as executor and testamentary trustee by a decree of the chancery court at Nashville in a suit brought for that purpose by the present complainant, then Gertrude Bosley Bowling, an infant, by next friend. By the decree of removal "all the right, title and interest" of the executor and testamentary trustee, in and to the estate of the testator, both real and personal, vested in him by the will were "divested out of him and vested in Nathaniel Baxter, Jr., as clerk and master of the chancery court, and his successors in office, in trust for the parties entitled thereto, but ·subject to the further orders of the court as to the appointment of a trustee," etc. On November 22, 1876, Baxter, having been succeeded in the office of clerk and master by Robert Ewing, tendered his resignation as receiver in the suit in which he had been appointed, which was accepted by the court, and thereupon the court appointed Robert Ewing, clerk and master of the court, receiver in the cause in the room and stead of N. Baxter, Jr., resigned. Both Baxter and Ewing administered the trusts of the will under the orders of the court, and with the approval of the next friend,

who was also the grandfather of the complainant. On October 4, 1881, the complainant intermarried with J. L. Whitworth, and on July 8, 1882, the bill now before us was filed by complainant, by her husband as next friend, against Robert Ewing, for a construction of the testator's will, and a settlement of the defendant's accounts.

The will made provision for the testator's widow, who has since died, and contains some specific devises and bequests not necessary to be noticed. It then proceeds as follows:

"I direct my executors to set apart the sum of $20,000 in gold, and to preserve it as a sacred fund, letting it remain as so much unproductive capital, not even lending it on interest, and on the day that my great-granddaughter, Gertrude Bosley Bowling, arrives at the age of twenty-one years, I wish my executors to pay over the said sum of money in gold to her as a birth-day present, for her sole and separate use, not to be liable for the debts or contracts of any husband she may ever have. This legacy is not to vest until said Gertrude reaches her majority.

"The rest and residue of my estate, real, personal and mixed, including the reversion of the lands given to my wife, and also including the legacy of personalty bequeathed to her, should she not survive me, I give and devise to my executors hereinafter named, who are also constituted testamentary and executory trustees, or to the survivor of them, or to either one who may accept the trust, his or their heirs and assigns, in trust nevertheless for the following uses

and purposes, that is to say: " The estate is to be kept together to the best advantage, as near as possible in the manner heretofore pursued by myself, the interest, rents, issues and profits of which are to be used, applied and appropriated for the education, benefit, support and maintenance of my great-granddaughter, Gertrude Bosley Bowling, now an infant, for and during the period of her natural life, for her sole and separate use, her receipt to be a good voucher to my executors for said interest, rents, issues and profits, and the same not to be liable for the debts or contracts of any husband she may ever have; and, upon the death of said Gertrude, leaving issue at the time of her death, said executors are required to transfer and convey the *corpus* of said estate, devised to them as aforesaid in trust, unto any child or children of said Gertrude who may be living at the time of her death, share and share alike, in fee simple forever; and if any child may have died during Gertrude's life leaving children or issue, said children or issue to represent or take the share of the parent. But should said Gertrude die without issue living at the time of her death, then the *corpus* of said estate, including any interest, rents, issues and profits not used or appropriated for the benefit of said Gertrude, and also including said legacy of $20,000 in gold, should the same not have vested, is to be disposed of as follows: That is to say, I give $15,000 to Girard Brandon and his wife, or the survivor of them, of the State of Mississippi; and I also give $15,000 to my wife should she be then living; and all the re-

Whitworth *v.* Ewing.

mainder of my estate, including all lapsed legacies, etc., so that I may not die intestate as to my property, is to pass to, and vest absolutely, according to the laws. of descent and distribution, in the persons, whoever they may be, who would have inherited the estate as. my heirs and distributees had I then, that is at the time of Gertrude's death, died intestate, and without wife, children or issue living at the time of my death," excluding, however, certain specified heirs and distributees, and their heirs.

It is stated in the bill, and admitted in the answer, that the sum of $20,000 in gold has never been set apart for the complainant as required by the will, but that the monies of the estate have been loaned at interest. And one object of the bill is to have the complainant's right to the interest received on the $20,000 declared. The complainant was not of age at the filing of the present bill, nor it seems when the decree below was rendered. But it is stated in the brief of the defendant's counsel, that she is now of age. Another object of the bill is to have a construction of the will as to the complainant's rights. to the "interest, rents, issues and profits" of the estate. The chancellor was of opinion that the complainant was not entitled to the interest realized on the $20,000, and was only entitled out of the interest, rents, issues and profits, to an annual sum sufficient "for her education, benefit and maintenance," the excess of rents, etc., to become a part of the *corpus* of the estate. The Referees report in favor of an affirmance of the decree on the first point, and a reversal

on the second. Both parties have filed exceptions which only bring these points before us.

The chancellor was of opinion that the complainant was not entitled to the interest on the $20,000, because the fund had never been set apart as required by the will, and could not vest in complainant until she came of age. The fund was therefore a part of the estate, and the interest must also be treated as a part of the estate. The Referees incline to the same view, but say that the point is not material if they are correct in holding that the entire interest and income go to the complainant. If she gets the entire income it is, of course, a matter of no consequence from what source any part of it was derived. If the $20,000 had actually been set apart in gold, as directed by the will, and the executor or trustee had subsequently used the gold and made a profit, it would seem clear that he could only be held to account therefor by the complainant if she came of age. The breach of trust would be as to a particular fund in which no other person could have an interest, in the event which had happened, except the legatee. In *Dimes* v. *Scott*, 4 Russ., 195, where an executor, instead of realizing an asset and investing the proceeds in the three per cent. consols for the benefit of a tenant for life, allowed the asset to remain in the form of a loan by the testator at a higher rate of interest, it was held that the tenant for life was only entitled to the income of an investment in consols. But in *Stroud* v. *Gwyer*, 28 Beav., 130, where a testamentary trustee, instead of investing the proceeds

of an asset actually realized in consols, loaned the fund at a higher rate of interest, it was held that the tenant for life was entitled to the entire income. In *Stephenson* v. *Harrison*, 3 Head., 729, a testator directed his executors to sell certain land and deposit the proceeds in a designated bank for the benefit of his slaves, who were to be emancipated after his wife's death. The widow sought to hold the executors to account for the profits made by them on the proceeds of the sale of the land. This court held that she was not entitled to an account. The opinion adds: "It was not the intention of the testator that this fund should be used by any one, but to remain in bank securely for the slaves at the death of the widow. But if any profit was made upon it by the executors, it would constitute an addition to the fund for the same purpose. It was an accumulation that must go with the fund, whether made with or without authority. The trustees can have no benefit from it themselves, nor can it be separated from the fund for the benefit of any one else." The reason of these rulings is that a fund once fixed with a trust becomes so far separated from the general assets of the estate that the trustee must account to the beneficiary for profits, "whether made with or without authority." It is not necessary that the beneficiary should have a vested interest in the fund at the time of the breach of trust. The slaves in the Stephenson case could take nothing until emancipated, after the death of the widow. It is enough if the beneficiary subsequently acquires a vested interest under the will.

The record in this case shows that the personal assets have, with slight exceptions, all been realized. The answer of the defendant, while conceding that the gold has perhaps never been set apart as ordered, adds : "The account sought by this bill may, however, show that the executor, in attempting to partially carry out the direction of the will in this regard, lent out about the sum named, and took notes therefor payable in gold. But these notes, with other assets, upon his settlement, he turned over to N. Baxter, Jr., clerk and master, and such of these notes as were not paid by the makers to said Baxter were by him delivered to this respondent." It appears from the record in the suit brought by the complainant to remove the executor, which is necessarily referred to by the pleadings in this cause, although not copied into the record, that the course of the executor, in loaning instead of setting apart the $20,000, was taken only after consultation with the grandfather of the complainant, who became her next friend in the suit, and who not only advised the loaning of the money, but borrowed $5,000 of it on ten years' time at ten per cent. per annum interest, securing the loan by mortgage on realty: *Bowling* v. *Scales,* 2 Tenn. Ch., 63. It fairly appears therefore, that the money was realized to be set apart, and was then, by a breach of trust, loaned upon notes bearing interest at the rate of ten per cent. per annum and payable in gold. The interest in such a case would follow the trust fund.

The difficulty in the residue of the will, which

we are asked to construe, is in reconciling the language used in all its parts so as to work out a definite plan. There can be no doubt that an active trust is created for the management of the residue of the estate during the life of the complainant, and then there is a devise over in two different contingencies, that is to say, in the event the complainant leaves issue living, and in the event she leaves no living issue. Obviously, we would suppose that what was to go over would be the same, or substantially the same, in each contingency. But taking the words used literally, only the *corpus* of the property would go to the children, while, in the absence of issue, the testator's heirs would take, in addition, a part of the rents and profits. The chancellor has cut the knot by treating the word "*corpus*" in the devise over to the children or issue as meaning the same as the *corpus*, "including any interest, rents, issues and profits," etc. of the devise over to the heirs of the testator. The Referees think that the general intent was to give to the complainant the entire net income, and that this intent should not be thwarted by implication.

If the devise consisted solely of the first part down to the devise over to complainant's issue, it would be difficult to raise a doubt as to the testator's meaning. He gives the residue of this estate to his executors, constituted testamentary trustees also, in trust to be kept together to the best advantage, as near as possible in the manner pursued by him, the interest, rents, issues and profits to be appropriated for the education, benefit, support and maintenance of his

great-granddaughter, for and during the period of her natural life, for her sole and separate use, her receipt to be a good voucher to the executors for said interest, rents, issues and profits. The language thus far plainly implies that the whole of the net income, after deducting the expenses of keeping the property together to the best advantage, and not merely a sum sufficient for the education, support and maintenance of the legatee, should go to her. The will uses the additional word for the "benefit" of the legatee, and requires only her receipt for the payments, and not vouchers showing a proper use of the fund. The will says, moreover, that the receipt of the legatee shall be a good voucher "for said interest, rents, issues and profits," the whole of them, and not for a part. It then provides that the "same" interest, rents, issues and profits shall be ".for her sole and separate use," and not be liable for the debts or contracts of any husband of the legatee, a provision manifestly of no avail if the payments of interest, etc., are limited to the actual expenditures for the education, support and maintenance of the legatee. The will contemplates that the payments will exceed the wants of the ward, and provides that the excess shall constitute a sole and separate estate. Then, as if to make the meaning too clear for doubt, the will provides that, upon the death of the legatee, the executors shall convey the "corpus of said estate devised to them as aforesaid in trust," not a corpus, including interest, rents, etc., but the corpus devised in trust. The whole clause, and each separate part, carry the same meaning, a

gift of the income to the legatee for life, and a devise over of the *corpus* to the remaindermen.

"But," adds the will, "should said Gertrude die without issue living at the time of her death, then the *corpus* of said estate, including any interest, rents, issues and profits, not used or appropriated for the benefit of said Gertrude, and also including said legacy of $20,000 in gold, should the same not have vested, is to be disposed of," etc. If we construe the words "including any interest, rents, issues and profits not used or appropriated for the benefit of said Gertrude" as covering the whole income during the entire life of the first taker, then it is obvious that the latter clause is inconsistent with all that has gone before, and the result would be, that while the tenant for life would take the whole of the net income as against her own issue, she would not have the same right as against the remaindermen in the contingency of not leaving issue. In other words, while the executors are ordered to pay the net income of the *corpus* of the estate to the tenant for life, taking her receipt therefor as a sufficient voucher, in the one contingency, their duties would be altogether different in the other contingency, and this, too, without any direction for accumulation anywhere in the will, and without any clear declaration of a change of intent, and, in fact, without any change of intent, except what we may choose to imply from the words "including any interest, rents, issues and profits not used and appropriated for the benefit of the said Gertrude." But these latter words are immediately succeeded by the

following: "And also including said legacy of $20,000 in gold should the · same not have vested." The testator, no doubt, intended that so much of the residuary estate as was not vested in the tenant for life, at her death without issue living, should go over, and thinking perhaps that, if she died under age, there might be some income not vested in her, the doubtful clause was added. In fact, the entire net income during her life had become vested in her by the previous part of the devise, and the clause in question had nothing to operate on, unless, indeed, we treat it as changing the first part of the devise *in toto*. But we think the words, under the circumstances, do not clearly disclose a change of intent, and are not sufficient to work so radical a difference in the interest of the beneficiary for life. That interest was intended to be precisely the same in either contingency of the devise over, except as to property, if any, not actually vested in the beneficiary at the time of her death.

The decree of the chancellor will be reversed, the report of the Referees modified, and a decree entered in accordance with this opinion. The costs will be paid out of the income of the trust estate.